PEOPLE ex rel. CURRAN v. BOARD OF EXCISE COM'RS OF CITY OF BROOKLYN.

(City Court of Brooklyn, Special Term. April, 1895.)

INTOXICATING LIQUORS—TRANSFER OF LICENSE.

    On certiorari to review a decision of the excise commissioners in refusing to transfer relator's liquor license, it appeared that the police captain refused to recommend the transfer on the ground that a sufficient number of places was already licensed on the street to which the transfer was asked. Afterwards the application of a third person for a transfer to the same place was asked, and, on the recommendation of the police captain, was granted. *Held*, that relator's application was arbitrarily denied.

Certiorari by John Curran to review a decision of the board of excise commissioners of the city of Brooklyn refusing to grant relator's application for a transfer of a liquor license.

Francis A. McCloskey, for relator.
Jacob Brenner, for respondents.

OSBORNE, J. The relator held a license to sell liquors at No. 99 Columbia street, issued to him August 23, 1894. On December 10, 1894, he made application to the board of excise for leave to transfer said license to the premises No. 482 Hicks street, between Degraw and Harrison (such location being on a block some 600 feet

long), and he complied with all the rules and regulations of the board of excise for the purpose of obtaining such transfer. On December 27, 1894, a remonstrance, signed by persons alleging themselves to be residents and property owners on said block, was filed with the board, protesting against the granting of said license, on the ground that there were already four saloons on the block, and that protestants believed "the same to be ample for all the wants and necessities of the public residing thereon," and "that any increase in the number of saloons would be inimical to the best interests of that community." In accordance with the practice of the board of excise, it called upon the police captain of the precinct in which the premises were located to answer certain inquiries on a form of blank used for that purpose. In response to the question on such blank: "Do you recommend the granting of the application? If not, state reasons,"—the captain answered: "No; place not needed." On a public hearing afforded the protestants, but one property owner was examined in opposition to granting the transfer applied for. He owned the premises No. 480 Hicks street, and his opposition was based on the ground that there were more than sufficient saloons already on the block, and the police captain also testified that he reported adversely to the application on the ground that "the place is not required; there are enough there already;" it was further shown by him that the block was about 600 feet long, and that there were four saloons on the block, counting both sides of the street. On January 4, 1895, the relator's application was refused, and he now seeks by certiorari to review the determination of the board of excise refusing his application. In the return to the writ of certiorari it appears that the board of excise denied the application of the relator "on the ground that the large number of signatures on the protest was of adjacent residents, and that, in the opinion of the commissioners, there are sufficient licensed places in that vicinity." If the foregoing facts stood alone, I should not be inclined to interfere with the disposition by the commissioners of excise of the application of the relator, as, in my opinion, they are vested with a discretion as to the location of licensed places. This discretion, however, must be properly, fairly, impartially, and consistently exercised, without discrimination in favor of one applicant as against another.

It further appears from the return by the commissioners to the writ that on and prior to November 26, 1894, one Diskin held a license from the board of excise for the sale of liquors at No. 456 Hicks street, a place located on the same block and about 150 feet from the place to which the relator sought to transfer his license. On November 26, 1894, and about two weeks before the relator made his application for a transfer, the board of excise gave Diskin leave to transfer his license from No. 456 Hicks street to No. 7 Fulton street, and after that time the premises No. 456 Hicks street ceased to be a liquor store. On January 10, 1895, six days after relator's application had been denied, one Bielmeier applied to the board for leave to transfer his license from No. 381 Palmetto street to No. 456 Hicks street, being the premises formerly occupied by Diskin.

Two of the protestants against granting the relator's application appeared as petitioners in favor of granting Bielmeier's application. The police captain recommended the granting of this application, and on January 23, just 19 days after relator's application had been denied on the ground of the protest of the adjacent residents, and that there were "sufficient licensed places in that vicinity," the board of excise granted the application of Bielmeier for another licensed place in the same vicinity. It is sought to sustain or explain this action of the commissioners on the ground that there was no protest filed, and that, when the police captain recommended the granting of the license to Bielmeier at No. 456 Hicks street, he thought that the liquor business previously carried on there had only been temporarily suspended, and that he was ignorant of the transfer of Diskin's license from that place to No. 7 Fulton street. This may account for the apparent inconsistency in the reports of the police captain, but it did not alter the facts, and those facts were known to or accessible to the commissioners. The granting of the license to Bielmeier to sell liquors at No. 456 Hicks street in less than three weeks after the refusal to grant relator's application to sell liquors at No. 482 Hicks street on the ground that there were already "sufficient licensed places in that vicinity," in the absence of any satisfactory explanation or any change in the surroundings, is so entirely inconsistent with a fair, impartial exercise of discretion based on "good or valid reasons," and is evidence of such discrimination in favor of Bielmeier's application as against that of the relator, that I am forced to the conclusion that the application of the relator was "arbitrarily denied," and that the action of the board of excise should be reversed.

Let an order be entered directing the board of excise to grant the application of relator, and awarding him costs on this proceeding. Ordered accordingly.